IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

FILED
2009 DEC 28  PM 4:52
CLERK US DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
DEPUTY

JAIME CORTEZ,

          Plaintiff,

-vs-                                                            Case No.  A-09-CA-642-SS

TOLTECA ENTERPRISES, INC. d/b/a Phoenix
Recovery Group,

          Defendant.

## ORDER

BE IT REMEMBERED on this day the Court reviewed the file in the above-styled cause, and specifically Defendant Tolteca Enterprises, Inc. ("Defendant")'s Motion to Compel Required Rule 26 Disclosure and for Sanctions [#20]; Plaintiff Jaime Cortez ("Plaintiff")'s Motion for Partial Summary Judgment [#22], Defendant's response thereto [#26], and Plaintiff's reply [#27]; Defendant's Motion to Strike the Motion for Partial Summary Judgment [contained in #26], and Plaintiff's response thereto [#29]; Plaintiff's Motion to Strike the Affidavit of Frank Gamboa [#28], to which no response has been timely filed; Defendant's Motion for Partial Summary Judgment [#36], Plaintiff's response thereto [#37], and Defendant's reply [#39]; and Plaintiff's Motion to Amend Complaint [#41], Defendant's response thereto [#43], and Plaintiff's reply [#44]. As an initial matter, the Court notes Defendant's Motion to Compel [#20] has been withdrawn based on an agreement between the parties, *see* Notice to Court [#21], and therefore the Court finds the motion should be DISMISSED as moot. Thereafter, having considered the rest of the

aforementioned documents, the case file as a whole, and the applicable law, the Court enters the following opinion and orders.

## Background

Plaintiff requested and was granted permission to proceed *in forma pauperis* in this case. *See* Order [#2]. Plaintiff alleges Defendant attempted to collect a debt from him in July and August of 2009. He claims Defendant's actions violated the Federal Fair Debt Collection Practices Act ("FDCPA") and the Texas Debt Collection Act ("TDCA"), as a tie-in statute,[1] because Defendant's employees used aliases and/or did not meaningfully disclose their identities, telephoned third parties and discussed the debt with them without obtaining Plaintiff's consent, did not send him a written notice within five days of its initial communication containing the required information, threatened to report the debt to Plaintiff's credit reports, and made numerous misrepresentations to him via email. *See* Am. Compl. at ¶¶ 9-17. Plaintiff claims as a result of these actions, he has sustained actual damages, including (but not limited to) injury to his reputation, invasion of privacy, damage to his credit, out-of-pocket expenses, and "emotional and mental pain and anguish and worry, shame, humiliation, loss of sleep, anxiety, nervousness, physical sickness, physical and mental suffering, pain, anguish, and fright." *Id.* at ¶ 18.

## ANALYSIS

### I.   Plaintiff's Motion to Amend Complaint

---

[1] Specifically, Plaintiff has sued Defendant for violating: (Count One) § 392.101 of the TDCA (which deals with the required statutory bond, discussed *supra*); (Count Two) § 1692g(a) of the FDCPA; (Count Three) § 1692d(6) of the FDCPA; (Count Four) §§ 392.302(2) and (3) of the TDCA; (Count Five) § 1692g(b) of the FDCPA; (Count Six) § 392.202 of the TDCA; (Count Seven) § 392.304(a)(1)(A) of the TDCA; (Count Eight) § 1692e(10) of the FDCPA; (Count Nine) § 392.304(a)(19) of the TDCA; (Count Ten) § 1692c(b) of the FDCOA; and (Count Eleven) § 1692f of the FDCPA. Pl.'s Am. Compl. at ¶¶ 19-40.

As an initial matter, the Court considers Plaintiff's motion for leave to file an Amended Complaint. *See* Pl.'s Mot. Amend [#41]. Defendant objects, claiming Plaintiff has not stated the reasons for the amendment, the amendment is futile in its attempt to show he suffered actual damages, Plaintiff unreasonably delayed in seeking the amendment, the Amended Complaint will require Defendant to engage in additional discovery, the Amended Complaint was filed only after Defendant brought its motion for partial summary judgment, and the Amended Complaint makes the new and suprising claim of punitive damages.

But the Court overrules these objections, based principally on the fact there has not yet been a scheduling order entered in this case (which is entirely the fault of the parties themselves), and therefore both parties are still entitled to amend their pleadings at will. The parties did file a joint proposed scheduling order on October 19, 2009 [#23], which would have required all parties to amend their pleadings on or before December 15, 2009. However, the parties were advised by the Clerk's Office that the proposed scheduling order was deficient because it was not signed. *See* Def. Notice [#25]. The parties were advised to correct the deficiency and refile the document immediately. *Id.* However, although over two months have passed, neither party has done so. Therefore, this case remains without a scheduling order. To rectify this deficiency, the Court will file a binding scheduling order concurrently with the present order. That scheduling order allows both parties to amend their pleadings until February 19, 2009. Therefore, both Plaintiff and Defendant are at this time entitled to file amended pleadings.

Accordingly, the Court GRANTS Plaintiff's Motion to File an Amended Complaint, and will consider the Amended Complaint in the foregoing order.

## II. Plaintiff's Motion for Partial Summary Judgment

### a. Summary Judgment Standard

Summary judgment may be granted if the moving party shows there is no genuine issue of material fact, and thus it is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). In deciding summary judgment, the Court construes all facts and inferences in the light most favorable to the nonmoving party. *Richter v. Merchs. Fast Motor Lines, Inc.*, 83 F.3d 96, 98 (5th Cir. 1996). The standard for determining whether to grant summary judgment "is not merely whether there is a sufficient factual dispute to permit the case to go forward, but whether a rational trier of fact could find for the nonmoving party based upon the record evidence before the court." *James v. Sadler*, 909 F.2d 834, 837 (5th Cir. 1990).

Both parties bear burdens of production in the summary judgment process. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). The moving party has the initial burden of showing there is no genuine issue of any material fact and judgment should be entered as a matter of law. FED. R. CIV. P. 56(c); *Celotex*, 477 U.S. at 322–23; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). The nonmoving party must then come forward with competent evidentiary materials establishing a genuine fact issue for trial, and may not rest upon mere allegations or denials of its pleadings. *Anderson*, 477 U.S. at 256–57; *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). Neither "conclusory allegations" nor "unsubstantiated assertions" will satisfy the non-movant's burden. *Wallace v. Tex. Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996).

### b. Discussion

Plaintiff claims he is entitled to summary judgment against Defendant on his claim Defendant violated Texas Finance Code § 392.101.[2] Pl.'s Mot. Part. Summ. J. [#22] at ¶ 3. Plaintiff claims this is so because Defendant admitted in its Answer that it did not have a surety bond on file with the Texas Secretary of State during the time period in which it attempted to collect a debt from him. *Id.* at ¶ 9. Accordingly, Plaintiff claims he is "entitled to summary judgment as a matter of law and statutory and actual damages as authorized by the TDCA § 392.403." *Id.* at ¶ 16. He claims he may recover statutory damages under § 392.403 even without showing any actual damages. *Id.* at ¶ 17.

Defendant does not dispute its insurance agent failed to file the required surety bond with the Secretary of State. Def.'s Resp. [#26] at ¶ 8; *and see* Orig. Answer [#10] at ¶ 8 ("Defendant admits that its insurance agent failed to file the debt collector's bond with the Texas Secretary of State but would show that this technicality has been cured."). However, Defendant argues this admission does not automatically entitle Plaintiff to a statutory award of $100 and actual damages under § 392.403 of the TDCA because (1) Plaintiff has not shown he sustained any actual damages, which is required under § 392.403 of the TDCA; and (2) Plaintiff has not surmounted the "bona fide error" defense contained in § 392.401 of the TDCA.

(1)     **Statutory Damages under § 392.403 of the TDCA**

The TDCA does require third-party debt collectors and credit bureaus to post a surety bond in the amount of $10,000 to be filed with the Secretary of State. *See* TEX. FIN. CODE §§ 392.101-102. Section 392.403 of the TDCA also provides for statutory damages in the event of a violation of § 392.101:

---

[2]Section 392.101 of the Texas Finance Code prohibits a third-party debt collector from engaging in debt collection unless it obtains a $10,000 surety bond and files a copy of the bond with the Secretary of State. *See* TEX. FIN. CODE § 392.101(a)(1), (c).

> (a) A person may sue for:
>
>> (1) injunctive relief to prevent or restrain a violation of this chapter; and
>>
>> (2) actual damages sustained as a result of a violation of this chapter.
>
> ...
>
> (e) A person who successfully maintains an action under this section for violation of Section 392.101...is entitled to not less than $100 for each violation of this chapter.

*Id.* § 392.403(a), (e).

The only Texas case to consider whether a plaintiff must show he has sustained actual damages as a result of a violation of the TDCA (assuming, of course, he does not seek injunctive relief, as in the present case) in order to be awarded statutory damages under § 392.403(e) is *Elston v. Resolution Services, Inc.*, 950 S.W.2d 180 (Tex. App.–Austin 1997).[3] In *Elston*, the Austin Court of Appeals noted subsection (e) begins with the language "A person ***who successfully maintains an action under this [section]***..." *See id.* at 183 (emphasis in original). The court rejected the interpretation—offered by the plaintiff in that case—that subsection (e) provides an independent cause of action from subsection (a); instead, it found "subsection [(e)] effectively conditions recovery of the $100 award on successful maintenance of a suit under subsection (a)." *Id.* The *Elston* court held that because the plaintiff had not obtained an injunction, he was required to prove actual damages to maintain his suit under subsection (a). *Id.* at 184.

The *Elston* court made clear a plaintiff attempting to be awarded the statutory damages set forth in § 392.403(e), based on a debt collector's violation of §§ 392.101 (for failure to file a surety

---

[3] *Elston* considered the statute originally codified as Article 5069-11.10(a), (c), which is now re-codified as Texas Finance Code § 392.403(a), (e). But because the two statutes are substantially identical, *Elston* is still good authority.

bond), must first set forth proof of actual damages.[4] This interpretation is consistent with the statutory language of the section. However, it is important to clarify that Plaintiff does not have to show actual damages in order to prove a violation § 392.101 occurred, but only to recover damages for the violation under § 392.403(e). Thus, even if Plaintiff shows Defendant violated § 392.101, he is not legally entitled to an award of statutory damages under §392.403(e) unless he sets forth some proof of actual damages (contrary to what he asserts).

### (2)   Proof of Actual Damages

In his attempt to provide proof of actual damages, Plaintiff submits only his own sworn affidavit. *See* Pl.'s Reply at Ex. B ("Cortez Aff."). In the affidavit, he claims he has suffered distress as a result of Defendant not having its bond on file; specifically:

> Upon discovering on August 5, 2009 that [Defendant] had no bond on file while it was trying to collect from me, I was very angry, frightened, and upset because I could not believe that a debt collector thought they trample on and ignore state law while dealing with me. Since then I have experienced worry, shame, humiliation, loss of sleep, anxiety, nervousness, anguish, and fright because of [Defendant]'s collection efforts and this litigation.

*Id.* at 2. For the purposes of the TDCA, actual damages may be established by proof of compensable mental anguish. *Monroe v. Frank*, 936 S.W.2d 654, 661 (Tex. App.–Dallas 1996) (citing cases).

However, Plaintiff's affidavit in this case does not conclusively prove Plaintiff suffered mental anguish damages as a result of Defendant's failure to have a surety bond on file—in fact, it indicates just the opposite. First, Plaintiff's claim he was "angry, frightened, and upset" because of Defendant's failure to have a surety bond on file is not legally sufficient to establish compensable

---

[4] Although Plaintiff claims "[i]n federal courts, it is generally held that an award of statutory damages is not dependent upon proof of actual damages," *see* Pl.'s Reply at ¶ 2, it is Texas law that applies to Plantiff's claim under the TDCA, not federal law. Thus, Plaintiff's counter-argument is without merit.

mental anguish. *See Parkway v. Woodruff*, 901 S.W.2d 434, 442-45 (Tex. 1995) (holding expressions of emotions such as anger, frustration, and vexation are not enough to establish mental anguish damages). The Texas Supreme Court held in *Parkway* that in order to support an award for past mental anguish (where there is no corresponding physical injury), a plaintiff must "present direct evidence of the nature, duration, or severity of [his] anguish," thus establishing a substantial disruption in the plaintiff's daily routine, or other evidence that reveals "a high degree of mental pain and distress" which is "more than mere worry, anxiety, vexation, embarrassment, or anger." *Id.* at 444; *see also Saenz v. Fidelity and Guar. Ins. Underwriters*, 925 S.W.2d 607 (Tex. 1996). In short, *Parkway* and later cases require "proof of a high degree of mental pain and distress that surpasses worry, anxiety, vexation, embarrassment, or anger[.]" *El-Khoury v. Kheir*, 241 S.W.3d 82, 88-89 (Tex. App.–Houston [1st Dist.] 2007) (citing cases). Evidence of "adequate details" to assess mental anguish may derive from the plaintiff's own testimony, the testimony of third parties, or testimony by an expert witnesses. *Parkway*, 901 S.W.2d at 444.

Plaintiff's testimony in the present case is not sufficient to establish compensable mental anguish damages resulting from Defendant's failure to file its statutory bond as a matter of law. The sum total of his testimony on the subject is that he was " very angry, frightened, and upset" when he discovered the violation, and that he has since then "experienced worry, shame, humiliation, loss of sleep, anxiety, nervousness, anguish, and fright because of [Defendant]'s collection efforts and this litigation." Cortez Aff. at ¶ 2. The first part of this test—that he was very angry, frightened, and upset as a result of Defendant having no bond on file—is conclusory and does not present evidence of the nature, duration, or severity of his mental anguish. *See Gunn Infiniti, Inc. v. O'Byrne*, 996 S.W.2d 854, 861 (Tex. 1999) ("Simply because a plaintiff says he or she suffered mental anguish

does not constitute evidence of the nature, duration, and severity of any mental anguish that is sufficient to show a substantial disruption of one's daily routine."). Nor is the testimony proof of a high degree of mental pain and distress such as is required to constitute compensable mental anguish. *Id.*[5] The rest of Plaintiff's testimony—that he experienced worry, shame, humiliation, loss of sleep, anxiety, nervousness, anguish, and fright "***because of [Defendant]'s collection efforts and this litigation***"—show feelings that are unrelated to Defendant's failure to file a bond. Instead, according to Plaintiff, those feelings resulted from the collection efforts and this litigation, which he himself initiated. In *Elston*, the Texas court of appeals held where a plaintiff did not specifically testify his alleged mental anguish was a direct result of the defendant's failure to comply with the bond requirement, he had failed to present sufficient evidence he suffered actual damages related to the alleged violations, and summary judgment against him was proper. *See* 950 S.W.2d at 184-85.

Thus, in the present case, the Court finds Plaintiff's testimony concerning the mental anguish he sustained as a result of Defendant's failure to file a bond is entirely conclusory, does not include evidence of the nature, duration, or severity of his mental anguish, does not show a high degree of mental pain and distress such as is required to establish compensable mental anguish, and (with regard to the second sentence of his quoted affidavit) does not show the alleged mental anguish was sustained as a result of a violation of § 392.101—in fact, it indicates just the opposite. Accordingly,

---

[5]In *Gunn Infinitii*, a DTPA case involving the purchase of a car, the Texas Supreme Court found the plaintiff's testimony—in which he claimed he had a "constant mental sensation of pain and a rude awakening," it was a nightmare every time he saw the car, he could not stand to be in the car, he was bothered by it, he experienced anguish and grief over its reliability, he was publicly humiliated and ridiculed by his friends, and he was embarrassed—did not rise to the level of "a high degree of mental pain and distress" that was "more than mere worry, anxiety, vexation, embarrassment, or anger." *Id.* at 861 (citing *Parkway*, 901 S.W.2d at 444). The single statement of the Plaintiff in the present case that he was "angry, frightened, and upset" presents a substantially lower degree of alleged anguish than that claimed by the plaintiff in *Gunn Infinitii*.

summary judgment is emphatically DENIED on the issue of whether Plaintiff is entitled to statutory or actual damages as a result of the violation.

### (3) Bona Fide Error Defense

Secondly, although it is undisputed Defendant had no bond on file in accordance with § 392.101 during the time it attempted to collect the debt from Plaintiff, Defendant raises the possibility of a "bona fide error" in its defense.[6] The TDCA provides that "[a] person does not violate this chapter if the action complained of resulted from a bona fide error that occurred notwithstanding the use of reasonable procedures adopted to avoid the error." TEXAS FIN. CODE § 392.401. A bona fide error is "unintentional, inadvertent, and in good faith." *FIA Card Servs., N.A. v. Gachiengu*, 571 F. Supp. 2d 799, 806 (S.D. Tex. 2008) (citations omitted). The defendant must show it adopted reasonable procedures to avoid the error in order for the bona fide error defense to apply. *Cent. Adjustment Bureau, Inc. v. Gonzales*, 528 S.W.2d 314, 316 (Tex. Civ. App. 1975).

Defendant claims its failure to have the surety bond on file with the Texas Secretary of State was not willful, intentional, or knowing, and therefore Defendant cannot be held liable for a violation of § 392.101. *See* Def.'s Resp. at ¶ 24. Defendant submits the affidavit of Frank Gamboa ("Gamboa"), the President and CEO of Defendant Tolteca Enterprises. *See id.* (Gamboa Aff. attached). He admits Defendant did not have a surety bond on file during July and August 2009, the time period Defendant sought to collect a debt from Plaintiff, but claims it did not know this until Plaintiff filed this lawsuit. *Id.* He claims the failure was unintentional, as Defendant had paid Peche

---

[6] Plaintiff complains that because Defendant did not originally plead this defense in its answer, it cannot do so now. The Court overrules Plaintiff's objection, based on the fact there has not yet been a final scheduling order entered in this case, as discussed in section I, *supra*. Therefore, both parties are still entitled to amend their pleadings until February 19, 2009.

Insurance Agency to secure and file the $10,000 surety bond for Defendant. *Id.* Defendant had arranged with Peche for the bond to automatically renew, and representatives of Peche had assured Defendant that its surety bond was in force and on file. *Id.* Defendant claims it was unaware Peche had not fulfilled its responsibility. *Id.*

The foregoing testimony establishes an issue of fact as to whether Defendant's failure to have a surety bond on file resulted from good faith error, despite its use of reasonable procedures. Accordingly, Plaintiff's motion for partial summary judgment is also DENIED on the issue of Defendant's liability for failure to file a statutory bond.

### III.    Defendant's Motion for Partial Summary Judgment[7]

Defendant, for its part, has filed a motion claiming it is entitled to partial summary judgment on the issue of its liability under § 392.403(e) of the TDCA and 15 U.S.C. § 1692k, due to the fact Plaintiff has allegedly presented no competent evidence to support the claim he suffered actual damages as a result of Defendant's alleged violation of either of those statutes. Def.'s Mot. Part. Summ. J. [#36] at ¶ 4.

In his response to Defendant's motion for summary judgment, Plaintiff submits his own "Declaration Under Penalty of Perjury," in which he testifies:

> In late July and early August 2009, I was unusually short-tempered, upset, and felt stressed out. I was not sleeping much... I indeed did not feel like myself. Embarrassed and ashamed, I told [a friend, Ms. McDougal] about [Defendant]'s numerous attempts to collect a debt from me related to my apartment's security deposit. I told her that before [Defendant] came after me, I had absolutely no idea my apartment thought I owed them money. I told her how I had discovered [Defendant] was trying to collect the debt from me despite not having a surety bond on file. I told her about how [Defendant]'s employees had lied, insisting they had a

---

[7]The same standard applies to this motion for summary judgment as laid out *supra*, in section II(a).

> bond on file when they did not; that [Defendant]'s employees used fake names when placing telephone calls to me, and that [Defendant]'s employees and threatened me and my credit rating. I reluctantly admitted to Ms. McDougal that [Defendant]'s collection activities had really scared me. I relayed to her my anxiety and worry about my credit rating and whether I would be able to rent another apartment in the future because of [Defenadant]'s debt collection activities.
>
> [Defendant]'s illegal debt collection efforts, as alleged in detail in my Original Complaint...have caused me considerable worry, loss of sleep, anxiety, nervousness, anguish, and fright because of their collection efforts during July and August 2009.

Pl.'s Resp. [#37] at Ex. A ("Cortez Decl.").

He submits as further evidence the declaration of his friend, Lindsay McDougal. *See id.* at Ex. B ("McDougal Aff."). McDougal testifies she noticed in late July and early August 2009 that Plaintiff was "unusually short-tempered, upset, and seemed stressed out, and he "did not seem like he was sleeping much." *Id.* She claims he told her Defendant's "debt collection efforts had frightened him," and he "seemed to me extremely worried, and anxious about his credit rating and ability to rent another apartment in the future because of [Defendant]'s debt collection activity." *Id.* She concludes her declaration: "I firmly believe [Defendant] has caused [Plaintiff] considerable worry, loss of sleep, anxiety, nervousness, anguish, and fright because of [Defendant]'s collection efforts during July and August 2009." *Id.*

### a. Mental Anguish Damages

A plaintiff may recover actual damages for mental anguish under both the FDCPA, 15 U.S.C. § 1692k(a)(1), and the TDCA, TEX. FIN.CODE § 392.403(a)(2). *See Baruch v. Healthcare Receivable Mangm't., Inc.*, 2007 WL 3232090 at* 2 n. 7 (E.D.N.Y. 2007); *Monroe v. Frank*, 936 S.W.2d 654, 661 (Tex. App.–Dallas 1996) (citing cases). However, as discussed at length above, a plaintiff must introduce direct evidence of the nature, duration, and severity of the mental anguish,

thus establishing a substantial disruption in his daily routine, in order to recover such damages. *See Univ. Life Ins. Co. v. Giles*, 950 S.W.2d 48, 54 (Tex. 1997); *Parkway*, 901 S.W.2d at 444.

In Plaintiff's affidavit, he submits his own and a friend's affidavit, claiming he lost sleep and "did not feel like" himself as a result of Defendant's allegedly wrongful behavior. Plaintiff claims Defendant's debt collection efforts caused him "considerable worry, loss of sleep, anxiety, nervousness, anguish, and fright" during July and August 2009, and McDougals' affidavit echoes this claim. The testimony presented in the two affidavits amounts to little convincing evidence of mental anguish; however, Plaintiff does claim he lost sleep for two months, which could have amounted to a substantial disruption of his daily routine. Therefore, although Plaintiff has presented only very slender evidence of mental anguish damages—and testifies to much that does ***not*** amount to compensable injuries—he has presented at least some small evidence of "a high degree of mental pain and distress" that amounts to "more than mere worry, anxiety, vexation, embarrassment, or anger," which may support an award of mental anguish damages. Thus, Plaintiff has created an issue of fact as to whether he sustained any compensable mental anguish as a result of Defendant's actions. The jury is entitled to resolve this conflict. Defendant's motion for summary judgment that Plaintiff has presented not evidence of actual damages is therefore OVERRULED.

### IV.  Motions to Strike

Finally, the Court considers both parties' motions to strike certain summary judgment evidence filed by the other party. *See* Def.'s Mot. Strike [contained in #26]; Pl.'s Mot. Strike Gamboa Aff. [#28]. Both motions are wholly without merit, as they deal with the weight—not the admissibility—of the evidence in question. For instance, Plaintiff's motion to strike the affidavit of Frank Gamboa, which was submitted in support of Defendant's Motion for Partial Summary

Judgment, is based on the fact the affidavit contains and relies upon hearsay, does not attach documents to which the affidavit refers, and contains false statements. But Plaintiff misunderstands the hearsay rule. Although Gamboa does testify to certain out-of-court statements, such as the fact an employee of Peche assured him the surety bond was on force and on file, he does not assert these statements to prove their veracity; in fact, Defendant acknowledges Peche's statements made to Gamboa were false. Instead, Gamboa's testimony on Peche's statements to him is offered as evidence of Gamboa's own state of mind regarding the filing of the required bond and the information he relied upon. When out-of-court statements are not offered to prove the truth of the matter asserted, they are not hearsay. *See* FED. R. EVID. 801(c) (defining "hearsay"). The rest of Plaintiff's objections, concerning the documents relied upon by Gamboa and whether his statements are false, are entirely irrelevant to the admissibility of his affidavit. If Plaintiff believes Gamboa made false statements, he can (and should) cross-examine him at trial regarding those statements.

As for Defendant's motion to strike Plaintiff's affidavit, it is also without merit. Defendant objects that Plaintiff's testimony is unsupported by demonstrable facts, uncorroborated, and claims damages that are not legally recoverable. None of these objections have any bearing on the affidavit's admissibility. Defendant also claims Plaintiff presents conflicting dates in his affidavit, but Plaintiff has since corrected this technical error with the submission of a corrected affidavit. Therefore, both motions to strike are DENIED in full.

## CONCLUSION

In accordance with the foregoing,

IT IS ORDERED that Defendant Tolteca Enterprises, Inc.'s Motion to Compel [#20] has been withdrawn based on an agreement between the parties, see Notice to Court [#21], and therefore is hereby DISMISSED as moot.

IT IS FURTHER ORDERED that Plaintiff Jaime Cortez's Motion for Partial Summary Judgment [#22] is DENIED in full.

IT IS FURTHER ORDERED that Defendant's motion to strike [contained in #26] is DENIED.

IT IS FURTHER ORDERED that Plaintiff's Motion to Strike the Affidavit of Frank Gamboa [#28] is DENIED.

IT IS FURTHER ORDERED that Defendant's Motion for Partial Summary Judgment [#36] is DENIED.

IT IS FINALLY ORDERED that Plaintiff's Motion to Amend Complaint [#41] is GRANTED.

SIGNED this the 28th day of December 2009.

_____
SAM SPARKS
UNITED STATES DISTRICT JUDGE